UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY CUNNINGHAM, | : | Case No. 3:11-cv-401 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 9-26) (ALJ's decision)).

I.

On May 5, 2008, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability commencing January 31, 2007. (Tr. 93, 116-25). Plaintiff alleged disability due to back and arm pain, depression, and severe anxiety. (Tr. 12). The ALJ found Plaintiff disabled as of July 1, 2009. (Tr. 22). Accordingly, the relevant timeframe for purposes of this appeal is January 31, 2007 - June 30, 2009. (Tr. 12).

Plaintiff's applications from January 31, 2007- June 30, 2009 were denied initially and upon reconsideration. (Tr. 61-64). Plaintiff appeared and testified at a hearing held on October 26, 2010. (Tr. 9). By decision dated May 10, 2011, the ALJ denied Plaintiff's claim for benefits. (Tr. 9-25). The ALJ found that prior to July 1, 2009, Plaintiff had the residual functional capacity ("RFC")[1] to perform sedentary work,[2] subject to additional limitations, that allowed him to perform a significant number of jobs in the national economy. (Tr. 23-24). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff then commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff is 47 years old and he graduated twelfth grade. (Tr. 11, 36). His past relevant work was as a general laborer and truck driver. (Tr. 55). Plaintiff alleges that he stopped working because he got fired in 2006 for "not showing up." (Tr. 40).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

---

[1] A residual functional capacity is the most a claimant can still do despite his limitations. It is assessed based on the relevant evidence in the case record. 20 C.F.R. § 404.1545.

[2] Work classifications are defined for Social Security purposes based on the amount of physical exertion involved. Sedentary work (least strenuous) involves lifting no more than ten pounds at a time and occasionally lifting or carrying small items. It also involves a certain amount of walking or standing. 20 C.F.R. §§ 404.1567, 416.967.

2. The claimant has not engaged in substantial gainful activity since January 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, right shoulder impingement syndrome, carpal tunnel syndrome, hypertension, obesity, affective (depressive) disorder, anxiety disorder NOS (not otherwise specified) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following additional limitations: no more than occasional overhead reaching with the right upper extremity; no more than frequent fingering and handling; unskilled tasks of a low-stress nature (i.e., no assembly-line production quotas or fast-paced duties).

6. Commencing July 1, 2009, the claimant lacked the residual functional capacity to perform even sedentary work as defined at 20 CFR 404.1567(a) and 416.967(a) on a regular and continuing basis.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on May 30, 1965. He is classified as a "younger individual" for Social Security purposes (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. Claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

11. Prior to July 1, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in

      significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

12.   Commencing July 1, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13.   The claimant was not disabled prior to July 1, 2009, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14.   Substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

15.   Because the claimant was not disabled during the period of time that he had insured status for Title II purposes (through December 31, 2008), the claimant's application for a period of disability and disability insurance benefits under Title II of the Social Security Act is denied.

16.   The claimant has been disabled since July 1, 2009, and continuing through the date of this decision for the purpose of establishing eligibility for supplemental security income under Title XVI of the Social Security Act.

(Tr. 12-24).

In sum, the ALJ concluded that prior to July 1, 2009, Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability, DIB, or SSI. (Tr. 25).

On appeal, Plaintiff argues that: (1) the ALJ failed to properly consider the psychological evidence of record; (2) the ALJ failed to properly consider the combination of Plaintiff's physical and psychological impairments; and (3) the ALJ failed to properly consider Plaintiff's pain complaints. The Court will address each argument in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record reflects:

<u>Plaintiff's Testimony</u>:

Plaintiff testified that he has pain in his back, neck, arms, and legs which affects his sleep at night. (Tr. 37). His fingers are always numb in both hands, which causes him to drop things. (Tr. 46). He cannot open jar lids and sometimes has problems buttoning his pants. (Tr. 48). Plaintiff's shoulders lock up and are painful and he becomes stiff and sore upon sitting. (Tr. 40).

Plaintiff began treatment at South Community to get help for depression, severe anxiety, and panic attacks. (Tr. 39). Plaintiff had panic attacks two to four times a week. (*Id*.) When he has panic attacks, Plaintiff claims that his arm goes numb and his heart starts beating real fast, and it feels like "spiders in the brain." (Tr. 39, 49). The panic attacks happen in and out of the home and typically last twenty minutes. (*Id*.) Plaintiff does not like being around people. (Tr. 39). Plaintiff thinks he got fired from his job in 2006 for "not showing up." (Tr. 40). He has been struggling with depression for quite a long time, but it has progressively worsened over the last couple of years. He rarely leaves his house because being in public triggers panic attacks. (Tr. 49). Plaintiff has suicidal thoughts once a week and three or four days out of the week he does not get out of bed and other days he sleeps 12-16 hours. (Tr. 45-46).

Plaintiff testified that he has daily anger outbursts where he will yell and throw things. (Tr. 51-52).

Psychological Impairments:

On June 10, 2008, Plaintiff began treatment at South Community Behavioral Health. (Tr. 39). He reported symptoms of panic attacks, anxiety, depression, and aches all over his body for the past year. (Tr. 344). Plaintiff also reported that he could not do anything, could not go to work, and could not be in crowds. (Tr. 345). He reported that he used to play softball and golf but cannot now because he is depressed, has no energy, and wants to "lay around." (*Id*.) He reported that he has not slept through the night in years, sleeps about one to two hours per night, wakes up, and then will sleep for days. (Tr. 351). The initial diagnoses were major depressive disorder; panic disorder with agoraphobia;[3] alcohol dependence in early full remission; and a GAF of 49.[4] (Tr. 354).

Treatment notes from June 26, 2008 reflect that Plaintiff reported that when he has panic attacks, his left arm goes numb, his heart races, and he thinks he is dying. He also reported that he has very few friends, does not enjoy activities that he previously enjoyed, has no energy, and has lost jobs in the past due to his depression.

---

[3] Agoraphobia is abnormal or persistent fear of public places or open areas.

[4] The Global Assessment of Functioning ("GAF") is a numeric scale (0-100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. A score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job).

He indicated that his work would go in "spurts" and he would lose interest in things. He further indicated that he has highs and lows, gets angry, has difficulty with attention and concentration, has racing thoughts, has problems with authority figures, and has panic attacks fourteen times per week (two times a day). (Tr. 353).

Plaintiff's initial consultation with a psychiatrist was on July 19, 2008. (Tr. 367-372). He reported that his severe panic attacks resumed approximately six months prior. The psychiatrist diagnosed major depression; dysthymic disorder;[5] panic disorder with agoraphobia; multiple poly-substance abuse and/or dependence, in remission; and assigned a GAF of 52.[6] The psychiatrist prescribed Cymbalta and Ambien. On August 20, 2008, Plaintiff reported to the psychiatrist, Dr. Moody, that he did not notice a difference since beginning the Cymbalta and still had a couple of panic attacks a day. He noted that he spent most of his time lying on the sofa watching television. Dr. Moody increased Plaintiff's Cymbalta and added Neurontin to his medication regimen. (Tr. 365-366).

On October 28, 2008, the state agency reviewing doctor, Dr. Dietz, diagnosed Plaintiff with depression and panic disorder with agoraphobia. Dr. Dietz further opined Plaintiff would be moderately limited in maintaining concentration,

---

[5] Dysthymic disorder is a chronic type of depression in which a person's moods are regularly low.

[6] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

-8-

persistence, and pace. (Tr. 403). On the mental RFC, Dr. Dietz also opined that Plaintiff would be moderately limited in his ability to withstand typical work stressors and to respond appropriately to changes in the work setting. (Tr. 408).

Dr. Moody continued to make changes to Plaintiff's medication regimen, adding medications in November 2008, February 2009, and April 2009. (Tr. 504, 511, 521). On April 14, 2009, Plaintiff's level of care was changed to pharmacological management only, because he had partially achieved his goals. (Tr. 498-499). Plaintiff's depression had decreased, but he was still having panic attacks. On April 30, 2009, Plaintiff reported that he was depressed and "in a fog". (Tr. 503). On May 20, 2009, Plaintiff reported that he was still having occasional suicidal ideations. (Tr. 501). Mental status showed Plaintiff's mood and affect was depressed, but there was some improvement in symptoms. (*Id.*)

On March 26, 2010, Plaintiff reported to Dr. Moody that he had been depressed a lot lately and did not feel the medications were working. (Tr. 584). On September 10, 2010, Dr. Moody continued Plaintiff's Trazadone, Neurontin, and Ambien, and added Lexapro to the medication regimen. The treatment notes through September 10, 2010 reflect Plaintiff's irritability, depressed mood, frequent panic attacks, fatigue, and decreased motivation. Between February 26, 2009 and October 21, 2009, the psychiatrist increased or added various

psychotropic medications due to increasing anxiety and/or depression, at least five times.

The psychological opinions of record are those of the non-examining reviewers and the examining psychologist, Dr. Rosenthal. (Tr. 15-17). However, neither the reviewers nor Dr. Rosenthal had the opportunity to review Plaintiff's mental health treatment notes because Plaintiff did not begin mental health treatment until after the state reviewed the record medical evidence.

Physical Impairments:

Plaintiff testified that his neck pain radiates down his arms and the pain is constant. (Tr. 47). His low back pain is also constant and radiates down both legs. (*Id*.) His right knee gives out when he walks and on occasion he stumbles. (Tr. 43).

On November 15, 2007, a left knee MRI showed bone marrow contusion of the medial femoral condyle[7] with adjacent soft tissue swelling and small joint effusion. (Tr. 245). On December 22, 2007, an orthopedic consult resulted in a diagnosis of internal derangement[8] of the left knee. (Tr. 248).

On September 1, 2007, an MRI of the cervical spine revealed degenerated discs with small subligamentous herniated nucleus pulposus at C4-C6 and C6-C7, both eccentric to the left. (Tr. 212). There was also neural foraminal stenosis on

---

[7] In other words, the MRI indicated bruising of the larger projection from the lower extremity of the femur bone.

[8] Internal derangement indicates internal damage to the joint.

-10-

the right at C5-C6 and on the left at C6-C7. The stenoses were of a moderate degree.

On June 4, 2009, a lumbar MRI showed discogenic and facet disease[9] at the lower two levels with bilateral foraminal stenosis, worse at 15-S1 where there was impingement and entrapment of 15 roots bilaterally. (Tr. 420). An MRI of the right shoulder dated January 8, 2009, revealed mild tendonosis, moderate impingement, muscular hypertrophy, and mild synovitis.[10] (Tr. 449).

On May 27, 2008, a physical medicine and rehabilitation specialist, Dr. Daniel Braunlin, evaluated Plaintiff. (Tr. 422). The physical examination revealed hypoactive upper extremity reflexes and tenderness of the right upper extremity trapezius. Dr. Braunlin clinically diagnosed right cervical radiculopathy.[11] (Tr. 422-423).

On May 12, 2009, Dr. William Donahue, orthopedic surgeon, evaluated Plaintiff. He diagnosed torn medial meniscus of the right knee, and osteoarthritis. (Tr. 497).

---

[9] Dicogenic disease is a condition where the endplates of the intervertebral disc spaces are not strong enough to withstand the pressures generated within the disc spaces. Facet disease is caused by the cartilage in the joints being worn down. Both are causes of back and neck pain.

[10] Synovitis is inflammation of a synovial membrane (soft tissue found between the joint capsule and the joint cavity) usually with pain and swelling of the joint.

[11] Cervical radioculopathy indicates neurology irritation of the nerve roots of the neck which impinge on nearby nerves resulting in pain.

On June 13, 2008, Dr. Danopulos evaluated Plaintiff. He noted that Plaintiff's grip strength was diminished on the right. (Tr. 308). Plaintiff began receiving cervical epidural injections. (Tr. 374).

On September 13, 2008, the pain management physician evaluated Plaintiff, noting decreased strength and decreased range of motion in the upper extremities. (Tr. 389-390). Plaintiff continued to receive pain management treatment. (Tr. 597-630).

On November 17, 2008, Dr. Das evaluated Plaintiff for the state agency. (Tr. 413-418). Dr. Das limited Plaintiff to occasional stooping. (Tr. 413).

**B.**

First, Plaintiff claims that the ALJ failed to properly consider the psychological record.

State agency physicians opined that Plaintiff had mild to moderate limitations in maintaining daily activities, social functioning, concentration, persistence, or pace. (Tr. 16). Dr. Marlow found that Plaintiff had no severe mental impairments, but that he was mildly limited in his ability to maintain social functioning. (Tr. 15). Dr. Dietz found that Plaintiff was mildly limited in his ability to maintain social functioning and daily activities, and moderately limited in his ability to maintain concentration. (*Id.*) Ultimately, the ALJ concluded that Plaintiff had severe mental impairments - specifically, anxiety disorder and affective depressive disorder. (Tr. 17). Therefore, it is clear that the ALJ relied on the psychological record evidence, because she designated the Plaintiff's mental impairments as severe.

Furthermore, the ALJ relied on the record in determining that Plaintiff's capacity to work was reduced prior to July 1, 2009, and she restricted Plaintiff to unskilled, low-stress work (*i.e.*, no assembly-line production quotas or fast-paced duties). (Tr. 18-20). This limitation speaks directly to the ALJ's consideration of the medical opinions of Drs. Rosenthal and Dietz. After a June 2008 exam, Dr. Rosenthal determined that Plaintiff could follow one to two step instructions and that his ability to cope with stress was mildly limited. (Tr. 300). Specifically, Plaintiff demonstrated adequate knowledge, insight, and judgement to make appropriate decisions about his medical and mental health needs. (TR. 299). Additionally, Plaintiff's thoughts were expressed in a logical and relevant manner, and he denied any suicidal ideation or psychotic symptomatology. (Tr. 298). Dr. Rosenthal's GAF of 60 reflected only mild psychological symptoms. (Tr. 300). Although Dr. Dietz found Plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace (Doc. 8 at 9), he determined that Plaintiff was capable of completing complex tasks that did not require strict production standards or schedules. (Tr. 409). Additionally, Dr. Marlow determined that Plaintiff did not have greater than mild limitations in mental functioning. (Tr. 337). The ALJ's decision to restrict Plaintiff to unskilled, low-stress work further supports a finding that the ALJ relied on the record psychological evidence.

Plaintiff argues that a more restrictive mental RFC is necessary based on the

psychological evidence.[12] However, this assertion is supported primarily by Plaintiff's own opinions about his psychological state. (Doc. 8 at 4-7). Plaintiff's statements must be considered in relation to the objective medical evidence when determining disability. 20 C.F.R. § 404.1529 (c)(4). An ALJ need not accept unsupported medical opinions or a Plaintiff's subjective complaints. *McDaniel* v. *Astrue*, No. 1:100V699, 2011 U.S. Dist. LEXIS 136274, at *4 (S.D. Ohio Nov. 28, 2011).

The ALJ also noted that Plaintiff testified that he was able to maintain a household with his girlfriend, perform daily routine tasks, help with light chores, and operate a motor vehicle. (Tr. 21). While Plaintiff argues that the ALJ relied too heavily on these reports, it is clear from the ALJ's decision that this was only one factor she considered, and to the extent Plaintiff displayed cognitive limitations, the ALJ restricted Plaintiff to unskilled low stress work.

Therefore, in evaluating Plaintiff's complaints against the objective medical evidence, it is clear that the ALJ's restrictions are consistent with the record as a whole.

## C.

Second, Plaintiff claims the ALJ failed to properly consider the combination of his physical and psychological impairments.

---

[12] Additionally, Plaintiff maintains that the opinions of Drs. Rosenthal, Marlow, and Dietz are insufficient because they only had minimal treatment records to review. However, Dr. Rosenthal based his findings on his own examination of Plaintiff. Moreover, Plaintiff has the burden of showing that he was disabled, and the lack of medical records before July 1, 2009 reflects that his mental symptoms were not debilitating.

The ALJ found that Plaintiff had both physical and mental impairments that were severe. (Tr. 13). As a result, the ALJ restricted Plaintiff to sedentary work with additional limitations addressing both his physical and mental difficulties. (Tr. 18-21). In step two of the sequential evaluation,[13] the ALJ found Plaintiff's severe impairments included: degenerative disc disease of the lumbar and cervical spine, right shoulder impingement syndrome, carpal tunnel syndrome, hypertension, obesity, depressive disorder, and anxiety disorder. (Tr. 13). Nevertheless, no objective medical source opined that Plaintiff was incapable of all work activity. (Tr. 19). Rather, Dr. Das opined that Plaintiff was capable of light work, and Drs. Holbrook and Thomas found Plaintiff physically capable of doing medium work. (Tr. 14). Likewise, state agency physicians opined that Plaintiff's mental impairments caused only a moderate limitation in concentration, persistence, and pace and did not preclude him from performing complex tasks that do not require strict production standards or schedules. (Tr. 409). If, as Plaintiff claims, the ALJ did not jointly consider his physical and mental impairments, then the ALJ would have found a RFC of light to medium work with regard to Plaintiff's physical impairments alone. Finding a more restrictive RFC of sedentary work with additional limitations, the ALJ acknowledges the combination of Plaintiff's physical and mental limitations.

---

[13] The regulations provide a five-step sequential evaluation for evaluating disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has "severe" impairments; (3) whether the claimant's conditions meet or medically equal any listed impairment; (4) whether the claimant can return to his past relevant work; and (5) whether a significant number of other jobs exist in the national economy that he could perform. 20 C.F.R. §§ 404.1520, 416.920.

Additionally, Plaintiff alleges a number of impairments the ALJ did not account for, but fails to provide what the impairments are, or that they would lead to a different RFC. (Doc. 8 at 10-12; Doc. 10 at 11). In this regard, Plaintiff cites primarily to his own complaints of back, knee, and right shoulder pain and hand numbness.[14] (Doc. 8 at 11-12). However, the ALJ's RFC[15] specifically addresses these problems, and Plaintiff has failed to evidence a need for greater limitations. (Doc. 8 at 12).

Next, Plaintiff argues that a limitation of "occasional stooping" should have been included in the RFC finding. (Doc. 8 at 12). This limitation was noted by Dr. Das. (Tr. 413). However, the ALJ is not *bound* by any findings made by state agency physicians. 20 C.F.R. § 404.1527 (e)(2)(i). Moreover, Plaintiff does not explain how a limitation to "occasional stooping" would significantly erode his RFC.[16] Accordingly, the ALJ's decision is supported by substantial evidence.

---

[14] The ALJ specifically stated that Plaintiff's complaints of hand numbness were not entirely credible. (Tr. 22). Drs. Danopulos and Swedberg both noted that Plaintiff's grip strength was within normal limits. (Tr. 307, 309, 641-42). Moreover, to the extent that Plaintiff complained of difficulty with his hands, the ALJ limited Plaintiff to no more than frequent fingering and handling. (Tr. 13, 18).

[15] Sedentary work with additional limitations of no more than occasional overhead reaching with the right upper extremity, no more than frequent fingering and handling, and unskilled tasks of a low-stress nature (*i.e.*, no assembly-line production quotas or fast paced duties).

[16] "[A] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping, should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p.

**D.**

Finally, Plaintiff claims that the ALJ failed to properly consider his pain complaints and credibility.

While reviewing the ALJ's decision, it is important to note that this Court must accord great deference to the ALJ's credibility determinations, as the ALJ had the opportunity to observe the claimant's demeanor during the hearing. *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003). The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi); 416.929(c)(3)(i)-(vi).

Plaintiff alleges that he is always in pain, and points to medical evidence such as moderate impingement syndrome of his right shoulder, two herniated discs in his neck, knee problems, lumbar spine stenosis, and nerve root impingement and entrapment to validate his complaints. (Doc. 8 at 13). However, to the extent that Plaintiff's pain was disabling, there is not sufficient evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 476 (6th Cir. 2003) (subjective complaints can support a claim for disability if there is also objective medical evidence). The ALJ considered all of the medical evidence regarding Plaintiff's impairments, but as previously discussed, no medical determination of disability was ever made. If the claimed pain is not substantiated by the medical record,

the ALJ must make a credibility determination based on the entire case record. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *Siterlet* v. *Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Therefore, the ALJ found that Plaintiff's allegations of disability were not supported by the objective medical record. (Tr. 22).

In addition to the objective medical evidence, the ALJ noted that Plaintiff maintains a household with his girlfriend, operates a motor vehicle, and helps with light chores. Based on these activities, the ALJ concluded that Plaintiff could withstand the reduced range of sedentary exertion. (Tr. 21). The ALJ also pointed to Plaintiff's periodic conservative care, and non-compliance with recommended pain treatment, as further evidence that Plaintiff's symptoms were not as severe as alleged. (Tr. 22). *See also* SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the levels of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").

Finally, the ALJ did not find Plaintiff's complaints about hand numbness entirely credible. (Tr. 22). *Walters* v. *Comm'r of Soc. Sec.*, 127 F3d. 532 (6th Cir. 1997) (discounting credibility is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence). None of the state agency physicians confirmed such a symptom. (Tr. 22). In fact, Dr. Danopulos noted that Plaintiff's grasp, manipulations, pinch, fine coordination, and range of motion were all

normal. (Tr. 307, 309). Likewise, Dr. Swedberg found Plaintiff's muscle tone and grip strength were well-preserved in his upper extremities. (Tr. 641-42). Additionally, there was no evidence of muscle atrophy and Plaintiff's manipulative ability was normal bilaterally. (Tr. 641-44). Thus, the ALJ found Plaintiff's allegations of hand numbness were disproportionately inconsistent with the record, and, therefore, unsupported by substantial medical evidence. (Tr. 22).[17] Accordingly, it is clear that the ALJ properly considered Plaintiff's pain complaints.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *Raisor v. Schweiker*, 540 F.Supp. 686 (S.D. Ohio 1982). The Commissioner's decision in this case is supported by such evidence.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Jeffrey Cunningham was not entitled to a period of disability, disability insurance benefits, and supplemental security income is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

---

[17] Despite Plaintiff's lack of credibility, the ALJ accounted for Plaintiff's hand numbness by limiting him to no more than frequent fingering and handling. (Tr. 13, 18).

Date: 9/11/12                                         *s/ Timothy S. Black*
                                                       Timothy S. Black
                                                       United States District Judge